# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

FILED
JUN 3 0 2015
Clerk, U.S. District Court
District Of Montana
Billings

| | |
|---|---|
| CROW ALLOTTEES ASSOCIATION, *et al.*, | CV 14-62-BLG-SPW |
| Plaintiffs, | |
| vs. | OPINION and ORDER |
| UNITED STATES BUREAU OF INDIAN AFFAIRS, *et al.*, | |
| Defendants. | |

The plaintiffs in this case are the Crow Allottees Association and numerous individuals who are members of the Crow Tribe and who own interests in allotments on the Crow Reservation (collectively the "Crow Allottees"). Presently before the Court are three motions seeking the dismissal of this case. Defendants Montana Water Court Chief Judge Russell McElyea and Associate Water Judge Douglas Ritter (collectively "Water Judges") moved to dismiss under Fed. R. Civ. P. 12(b)(6). Defendants United States Bureau of Indian Affairs, Department of the Interior, Secretary of the Interior Sally Jewell, and Assistant Secretary of the Interior for Indian Affairs Keven Washburn (collectively "Federal Defendants") filed an Answer and moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). The Water Judges later filed another Motion to Dismiss on a new theory.

1

The Court finds that the Federal Defendants have not waived their sovereign immunity. Therefore, the Court grants the Federal Defendants' Motion for Judgment on the Pleadings. The Court will delay ruling on the Water Judges' Motions to Dismiss in light of the Crow Allottees' recent Motion to Supplement. (Doc. 57).

## I. Background

The Crow Allottees challenge the Water Compact entered into between the Crow Tribe, the State of Montana, and the United States. To put their arguments and the Water Compact in context, the Court will briefly discuss the history of the Crow Reservation and the associated water rights.

### A. Pre-Water Compact Background

In 1851, the United States and several Native American tribes entered into the Treaty of Fort Laramie. (Doc. 3 at 20). The treaty provided 38.5 million acres for the Crow Tribe across what is now Montana and Wyoming. (*Id.*). In 1868, the Crow Tribe's reserved boundary was reduced to about 8 million acres in another Treaty of Fort Laramie. (*Id.*). In 1891, the Crow Tribe ceded two million acres to the federal government by an act of Congress. (*Id.* at 21). In 1904, the federal government further reduced the Crow Reservation to its present size of 2.3 million acres. (*Id.*).

Pursuant to the 1887 Dawes Severalty Act, 24 Stat. 388, and the 1920 Crow Allotment Act, 41 Stat. 751, reservation land was allotted and distributed to enrolled members of the Crow Tribe. (*Id.*). The allottees were issued trust patents, with the legal title to the allotments held in trust by the United States.[1] (*Id.*). The allotments can be devised or passed down according to Montana's intestacy laws. *See Babbitt v. Youpee*, 519 U.S. 234, 237 (1997).

In 1908, the Supreme Court decided *Winters v. United States*, 207 U.S. 564 (1908). Now known as the *Winters* doctrine or *Winters* rights, the Court held that the United States impliedly reserved in Indian treaties a right to the amount of water to fulfill the purposes of establishing reservations. *See United States v. Anderson*, 736 F.2d 1358, 1362 (9th Cir. 1984). In other words, even though not explicitly in the treaties establishing the reservations, tribal members have the right to sufficient water for agricultural purposes. *See Winters*, 207 U.S. at 576. The priority date for *Winters* rights is the date the reservation was established. *Id.* at 577. Also, tribal members do not lose their *Winters* rights by non-use. *Colville Confederated Tribes v. Walton*, 647 F.2d 42, 51 (9th Cir. 1981).

This senior, non-expiring water right is valuable for tribal members. The doctrine of appropriation governs water rights in western states, including Montana. *In re Adjudication of the Existing Rights to the Use of All the Water*, 55

---

[1] Pursuant to the Crow Allotment Act, "competent" tribal members could elect in writing to receive their allotments patented to them in fee.

3

P.3d 396, 399 (Mont. 2002). Under the doctrine of appropriation, "rights to water for irrigation are perfected and enforced in order of seniority, starting with the first person to divert water from a natural stream and apply it to a beneficial use." *Montana v. Wyoming*, 131 S. Ct. 1765, 1772 (2011). Once perfected, the senior holder may fulfill his right to the "beneficial use" of water before junior appropriators get any water. *Id*. However, a typical senior right could be abandoned through non-use. *See Heavirland v. State*, 311 P.3d 813, 818 (Mont. 2013). Conversely, a tribal member holding *Winters* rights cannot lose the senior position through abandonment.

In 1973, the Montana Legislature passed the Montana Water Use Act, which requires all water rights in Montana to be adjudicated. Mont. Code Ann. Title 85, chapter 2. The United States initiated litigation in this Court to quantify the Crow Tribe's water rights in 1975. *United States v. Big Horn Low Line Canal Co.*, CIV 75-34-BLG-JDS.[2] In 1979, Montana established a Reserved Water Rights Compact Commission to negotiate water compacts with Native American tribes. Mont. Code Ann. §§ 2-15-212(1), 85-2-702.

B. The Crow Tribe-Montana Water Rights Compact and the Settlement Act

Montana and the Crow Tribe commenced negotiations regarding a water compact in 1981. Mont. Code Ann. § 85-20-902(2). In 1999, the Crow Tribe,

---

[2] Likely due to its age, this case does not appear in CM/ECF.

Montana, and the United States entered into the Crow Tribe-Montana Water Rights Compact ("Compact"). The Compact is found at Mont. Code. Ann. § 85-20-901.

The Compact defines "Tribal Water Right" as the "right of the Crow Tribe, including any Tribal member, to divert, use, or store water as described in Article III of this Compact." Compact, Art. II.30. Therefore, the allottees' water rights must come out of the amounts designated as a Tribal Water Right. Article III specifies exactly how much water is included in the Tribal Water Rights in each basin within or near the Crow Reservation. The Tribal Water Rights will be administered by and distributed to the Tribal members by the Tribe through the Tribal Water Resources Department. *Id.*, Art. IV.A.2.a. The Compact requires the Tribe to develop a Tribal Water Code to guide the administration of the Tribal Water Rights. *Id.*, Art. IV.A.2.b.

The Compact became effective when ratified by Montana, the Tribe, and the United States Congress. *Id.*, Art. VII.A.1. Upon ratification, an action was initiated in the Montana Water Court to adopt a proposed decree "as the decree of the water rights held by the United States in trust for the Crow Tribe." *Id.*, Art. VII.B.2. If the Water Court adopts the proposed decree, the parties must file in this Court a Stipulation to Dismiss in *Big Horn Low Line Canal Co. Id.*, Art. VII.B.4. Finally, the Crow Tribe and the United States on behalf of the allottees agreed that the Compact satisfies any water rights based on *Winters*. *Id.*, Art. VII.C.

5

The Montana Legislature ratified the Compact later in 1999. Beginning in 2008, efforts began to have Congress ratify the Compact. *See* Doc. 35 at 16. On November 16, 2009, the Crow Allottees wrote a letter to the Assistant Secretary of the Interior and expressed a concern that the Department of the Interior had a conflict of interest between representing the federal government's water rights and the allottees' individual water rights. (Doc. 3-1). To remedy that concern, the Crow Allottees demanded that the United States provide funds to retain independent counsel. (*Id.*). On February 5, 2010, the Department responded in a letter that it would be impractical to include each allottee in the negotiations, but it assured the Crow Allottees that the United States would act in their best interests. (Doc. 3-2). The Department said it would "find out more about the Crow Allottees Association and how the Association might assist the Department as it considers the rights of allottees within the context of the Crow settlement." (*Id.*). This is the last communication with the United States referenced by the Crow Allottees. The Department did not provide the Crow Allottees with funds to retain private counsel.

On December 8, 2010, Congress passed the Crow Tribe Water Rights Settlement Act of 2010 ("Settlement Act"). The Settlement Act is found at §§ 401-416 of the larger Claims Resolution Act of 2010, Pub. L. No. 111-291, 124 Stat 3064. The Settlement Act's stated purpose is to "achieve a fair, equitable, and

final settlement of claims to water rights in the State of Montana for…the Crow Tribe…[and] the United States for the benefit of the Tribe and allottees." Settlement Act, § 402(1). Through the Settlement Act, Congress ratified the Compact. *Id.*, § 404(a)(1).

The Settlement Act established the means of dividing the Tribal Water Rights defined in the Compact. Congress's goal is "to provide to each allottee benefits that are equivalent to or exceed the benefits allottees possess as of the date of enactment of this Act." *Id.*, § 407(a).

Under the Settlement Act, the Tribal Water Rights are held in trust by the United States for the Tribe and the allottees. *Id.*, § 404(c)(1). Any entitlement of water by an allottee must be satisfied by the Tribal Water Rights. *Id.*, § 407(d)(2). Each allottee "shall be entitled to a just and equitable allocation of water for irrigation purposes." *Id.*, § 407(d)(3).

To administer the Tribal Water Rights among the allottees, the Tribe must create a Tribal Water Code. *Id.*, § 407(f)(1). The Tribal Water Code must include:

(A) tribal allocations of water to allottees shall be satisfied with water from the tribal water rights;

(B) charges for delivery of water for irrigation purposes for allottees shall be assessed on a just and equitable basis;

(C) there is a process by which an allottee may request that the Tribe provide water for irrigation use in accordance with this title;

(D) there is a due process system for the consideration and determination by the Tribe of any request by an allottee, or any successor in interest to an allottee, for an allocation of such water for irrigation purposes on allotted land, including a process for--

    (i) appeal and adjudication of any denied or disputed distribution of water; and

    (ii) resolution of any contested administrative decision; and

(E) there is a requirement that any allottee with a claim relating to the enforcement of rights of the allottee under the Tribal Water Code or relating to the amount of water allocated to land of the allottee must first exhaust remedies available to the allottee under tribal law and the Tribal Water Code before initiating an action against the United States or petitioning the Secretary pursuant to subsection (d)(6).

*Id.*, § 407(f)(2)(A)-(E).  After the Tribe drafts the Tribal Water Code, it must submit it to the Secretary of the Interior for approval.  *Id.*, § 407(f)(3)(B).  The Secretary must "approve or disapprove the tribal code within a reasonable time." *Id.*, § 407(f)(3)(C).

Through the Compact and the Settlement Act, the United States, acting as trustee for the allottees, waives and releases the allottees' *Winters* rights. *Id.*, § 410(a)(2).  This waiver becomes effective on the Settlement Act's enforceability date. *Id.*, § 410(b).  The Settlement Act becomes enforceable after the Secretary publishes in the Federal Register that, *inter alia*, the Montana Water Court has approved the consent decree and any appeal process is complete.  *Id.*, §§ 403(7), 410(e)(1)(A).

In 2011, the Crow Tribe approved the Compact by a special referendum vote. On April 22, 2015, the Tribe submitted its proposed Tribal Water Code to the Secretary. (Doc. 46). The Secretary must now act on the Tribal Water Code "within a reasonable time." Settlement Act, § 407(f)(3)(C).

## C. Subsequent litigation

On October 24, 2012, the United States, Crow Tribe, and Montana moved the Montana Water Court to issue a Final Decree pursuant to the Compact. (Doc. 3 at 27). The Water Court issued a preliminary decree containing the Compact and allowed a period for objections. (*Id.* at 28). In Spring 2013, at least 48 allottees filed individual objections to the Compact. (Doc. 27 at 11). On May 15, 2014, the Crow Allottees retained counsel and filed the instant action before this Court. The same day, the Crow Allottees filed a Motion to Stay in the Water Court pending this Court's resolution of this case. (*Id.*). The Crow Tribe and the United States opposed the Motion to Stay and moved to dismiss the allottees' objections. (*Id.* at 12). On July 30, 2014, the Water Court dismissed the allottees' objections. (*Id.*).

On August 29, 2014, the Crow Allottees appealed the Water Court's decision to the Montana Supreme Court. Notice of Appeal, *In the Matter of the Adjudication of Existing and Reserved Rights to the Use of Water, Both Surface and Underground, of the Crow Tribe of Indians of the State of Montana* (Mont.

9

August 29, 2014) (No. DA 14-0567) ("Montana Appeal").[3]  On November 11,

2014, the Crow Allottees moved the Water Court to stay proceedings pending the

appeal.  (Doc. 27 at 12).  On December 1, 2014, the Crow Allottees filed a Petition

for a Writ of Supervisory Control with the Montana Supreme Court.  (*Id.*).  On

December 2, 2014, the Water Court denied the Motion to Stay Pending Appeal.

(*Id.*).  On December 24, 2014, the Montana Supreme Court denied the Crow

Allottees' Petition for a Writ of Supervisory Control and ordered the parties to

brief the Crow Allottees' appeal.  Order, Montana Appeal (Dec. 24, 2014).  The

appeal is currently fully briefed, and the Montana Supreme Court will be deciding

the case sitting en banc.  Order, Montana Appeal (June 10, 2015).

On May 27, 2015, the Water Court dismissed the remaining objections and

approved the Compact.  (Doc. 50 at 1).  On June 3, 2015, the Water Court granted

certification pursuant to Mont. R. Civ. P. 54(b) and entered final judgment.  (*Id.* at

1-2).  Any appeal from the Water Court's decision to the Montana Supreme Court

must be taken within 60 days from June 3.  *See* Mont. R. App. P. 4(5)(a)(i).

D. The instant case

The Crow Allottees filed this action on May 15, 2014.  In the First Amended

Complaint, the Crow Allottees allege that the Federal Defendants violated their

fiduciary duty to the Crow Allottees during the Compact's negotiations.

---

[3] The Montana Supreme Court docket is available at
https://supremecourtdocket.mt.gov/activecase.jsp (last accessed June 29, 2015).

Specifically, the Crow Allottees claim that the Federal Defendants should have provided independent counsel, violated their due process rights by waiving the *Winters* rights without adequately consulting the Crow Allottees, and violated their fiduciary duty by failing to ensure that the tribal members will retain an adequate amount of water. (Doc. 3 at 35-41). The Crow Allottees seek a writ of mandamus to compel the United States to provide them with independent legal counsel. (Doc. 3 at 42). The Crow Allottees also sought an injunction against the Water Judges to prevent them from finalizing the Compact. (Doc. 3 at 42-45). However, in light of the Water Court's recent ruling, the Crow Allottees seek to supplement their Amended Complaint to convert their request for an injunction against the Water Judges to a request for declaratory relief. (Doc. 57).

The Federal Defendants moved for a judgment on pleadings pursuant to Fed. R. Civ. P. 12(c). The Water Judges have two outstanding Motions to Dismiss. In this Order, the Court will address the Federal Defendants' motion.

## II. Legal Standard

A motion brought pursuant to Fed. R. Civ. P. 12(c) is analyzed under the same standard as a motion under Fed. R. Civ. P. 12(b)(6). *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). The Court must accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiffs. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1061 (9th

11

Cir. 2012). "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## III. Discussion

The Federal Defendants present three arguments in their motion: (1) The Crow Allottees do not have standing; (2) the Federal Defendants have not waived their sovereign immunity; and (3) even construing all alleged facts in favor of the Crow Allottees, they cannot prevail on the merits of their claims. The Court finds that the Federal Defendants have not waived their sovereign immunity. Since that ruling is dispositive, the Court declines to address the other arguments.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The government's waiver of sovereign immunity cannot be inferred, but rather must be "unequivocally expressed." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003). "Any ambiguities in the statutory language are to be construed in favor of immunity, so that the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires." *F.A.A. v. Cooper*, 132 S. Ct. 1441, 1448 (2012) (internal citation omitted). Plaintiffs bear the burden of demonstrating the

12

unequivocal waiver. *Cunningham v. United States*, 786 F.2d 1445, 1446 (9th Cir. 1986).

The Crow Allottees identify two sources of waivers of sovereign immunity. First, the Crow Allottees argue that 25 U.S.C. § 345 and 28 U.S.C. § 1353 waive the Federal Defendants' sovereign immunity in cases brought by allotment holders. Second, the Crow Allottees argue that the Administrative Procedure Act ("APA") also waives sovereign immunity in this instance. The Court will separately address each argument.

A. 25 U.S.C. § 345 and 28 U.S.C. § 1353

25 U.S.C. § 345 provides in relevant part:

> All persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment Act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress, may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto in the proper district court of the United States; and said district courts are given jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty (and in said suit the parties thereto shall be the claimant as plaintiff and the United States as party defendant); and the judgment or decree of any such court in favor of any claimant to an allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him…

28 U.S.C. § 1353 similarly provides:

13

> The district courts shall have original jurisdiction of any civil action
> involving the right of any person, in whole or in part of Indian blood
> or descent, to any allotment of land under any Act of Congress or
> treaty.

The Supreme Court found that § 345 contemplates two types of cases: (1)
Suits seeking the issuance of an allotment; and (2) suits involving the Indian's
interests in the allotment after he has acquired it. *United States v. Mottaz*, 476 U.S.
834, 845 (1986).  The structure of § 345 only waives the government's sovereign
immunity in the first kind of cases – those seeking an allotment. *Id.* The
government does not waive its sovereign immunity in the second kind of cases –
when an Indian already has an allotment. *Id.* The Court noted that just because a
federal court has general subject-matter jurisdiction over claims related to
allotments, it does not necessarily follow that the government has waived its
sovereign immunity. *Id.*

This distinction was illustrated in *Jachetta v. United States*, 653 F.3d 898
(9th Cir. 2011). In *Jachetta*, the plaintiff applied for an allotment containing two
parcels (Parcels A and B). *Id.* at 902. The BLM approved the plaintiff's
application, but it mistakenly only included a reference to Parcel A in the
allotment. *Id.* Before it corrected the mistake, the BLM issued permits to the State
of Alaska and a private company to use Parcel B. *Id.* By the time the plaintiff
convinced the BLM to issue him an allotment for Parcel B, Alaska and the

14

company had turned it into a gravel pit. *Id.* The plaintiff sued, among other parties, the BLM under various theories. *Id.* at 902.

The Ninth Circuit rejected the plaintiff's arguments that 25 U.S.C. § 345 and 28 U.S.C. § 1353 waived the government's sovereign immunity in his case. *Id.* at 906-07. The Ninth Circuit noted the under § 345, the government only waived its sovereign immunity in cases where somebody is seeking an allotment. *Id.* at 906. § 345 does not waive sovereign immunity when the person already has the allotment. *Id.* Since the plaintiff already owned the allotment and was suing for damages sustained to it, § 345 did not waive the BLM's sovereign immunity. *Id.*

The Ninth Circuit quickly rejected the plaintiff's argument that 28 U.S.C. § 1353 waived the government's sovereign immunity:

> To the extent Jachetta identifies 28 U.S.C. § 1353 as yet another
> source of an alleged waiver of the government's sovereign immunity,
> we need not analyze this source separately. We have held that 28
> U.S.C. § 1353 is a recodification of the jurisdictional portion of § 345.

*Id.*

The cases that the Crow Allottees rely upon do not support the finding that § 345 waives the government's sovereign immunity in cases where an allottee seeks a declaration of rights associated with the allotment. For example, in *Lord v. Babbitt*, the plaintiff brought suit to establish his right to possess an allotment. 943 F. Supp. 1203, 1205 (D. Alaska 1996). As discussed above, this is an instance when § 345 waives sovereign immunity. *Mottaz*, 476 U.S. at 845. The Crow

15

Allottees cite to *United States v. Preston*, but *Preston* actually supports the Federal Defendants' argument. 352 F.2d 352, 356 (9th Cir. 1965) ("Section 345 gives no general consent of the United States to be sued even in connection with its administration of allotments").

Similar to *Jachetta*, the Court finds that §§ 345 and 1353 do not waive the Federal Defendants' sovereign immunity. The Crow Allottees already possess allotments. This suit fits into the second type of cases described by *Mottaz*, as the Crow Allottees seek a declaration of rights associated with their allotments. The United States has not consented to suits brought by allotment owners in § 345. Since § 1353 is simply "a recodification of the jurisdictional portion of § 345," it also does not waive the Federal Defendants' sovereign immunity. *Jachetta*, 653 F.3d at 906.

### B. The APA

The waiver of sovereign immunity in the APA is found at 5 U.S.C. § 706. It provides:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--
>
> **(1)** compel agency action unlawfully withheld or unreasonably delayed; and
>
> **(2)** hold unlawful and set aside agency action, findings, and conclusions found to be--

> **(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> **(B)** contrary to constitutional right, power, privilege, or immunity;
>
> **(C)** in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> **(D)** without observance of procedure required by law;
>
> **(E)** unsupported by substantial evidence in a case subject to <u>sections 556</u> and <u>557</u> of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
>
> **(F)** unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.

Parties may only challenge final agency actions under § 706. *Oregon Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006). Two conditions must be met for an agency action to be final. *Bennett v. Spear*, 520 U.S. 154, 177 (1997). "First, the action must mark the 'consummation' of the agency's decision making process—it must not be of a merely tentative or interlocutory nature." *Id.* at 177-78 (internal citation omitted). Second, "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* at 178 (internal quotations omitted). "The core

question is whether the agency has completed its decision making process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992). The inquiry is pragmatic and the focus is "on the practical and legal effects of the agency action." *Oregon Natural Desert Ass'n*, 465 F.3d at 982.

The Court finds that there has not been a "final agency action" to challenge under § 706. The waiver of the Crow Allottees' *Winters* rights does not become final until the Secretary publishes in the Federal Register that the litigation originating in the Water Court is completed. Settlement Act, § 410(e)(1)(A). While the Water Court has approved the Compact, those proceedings are not complete. First, the Crow Allottees appealed the Water Court's decision to dismiss their objections. Second, any non-Crow Allottees who objected could appeal the Water Court's approval of the Compact. Depending on how the Montana Supreme Court decides either of those appeals, the Court could remand for further proceedings before the Water Court. There could also be motions to reconsider or possible petitions for certiorari to the Supreme Court of the United States.

Since the waivers of claims identified in the Compact and the Settlement Act are not yet enforceable, there has not been a final agency action to challenge under the APA. Because the Secretary still needs to find that the Water Court adopted the Compact and all appeals have been exhausted, there has not been an agency

18

action with "an indicia of finality." *Indus. Customers of Nw. Utilities v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005). In the absence of a final agency action, the APA has not waived the Federal Defendants' sovereign immunity.

**IV. Conclusion**

The Federal Defendants have not waived their sovereign immunity.

Accordingly, IT IS HEREBY ORDERED that the Federal Defendants' Motion for Judgement on the Pleadings (Doc. 34) is GRANTED.


DATED this __30th__ day of June, 2015.

SUSAN P. WATTERS
U.S. DISTRICT COURT JUDGE